Williams, Judge,
delivered the opinion of the court:
The plaintiff, at all times material to the issues in this case, was an assistant counsel in the National Recovery *93 Administration. By direction of his superior officers, and under formal travel orders issued by them, he traveled extensively in the performance of his official duties during the period here involved. He sues to recover $328.18, alleged to be due him on account of unrefunded traveling expenses and unpaid per diem allowances. The claim consists of three items which will be considered in the order in which they are set forth in the petition.
1. In December 1933, the plaintiff traveled on official business from Washington, D. C., to Portland, Oregon, and thence a few days later to Seattle, Washington. The travel order signed by the Chief Clerk of the National Recovery Administration directed the plaintiff to proceed to Seattle, Washington and return to Washington, D. C. While the travel order itself did not so provide, the plaintiff was instructed to stop over at Portland, Oregon, and look after matters there before proceeding on to Seattle, which he did. The plaintiff, deeming the exigencies of the business required him to spend his entire time while traveling in preparation of the case which necessitated his trip, requested the National Recovery Administration to furnish him with a requisition for a pullman section from Washington, D. C., to Portland, Oregon. This was done, and the plaintiff occupied a section from Washington to Chicago. At Chicago neither a pullman lower berth nor a section was available and he was given a compartment from Chicago to Portland, at the cost of a section. He occupied a pullman lower berth from Portland to Seattle. When plaintiff’s travel voucher was submitted to the Comptroller General there was deducted therefrom the sum of $12.00, which represented the excess cost between a through fare for a pullman lower berth from Washington, D. C., to Seattle, Washington, and the cost of a section from Washington, D. C., to Portland, Oregon, plus the cost of a pullman lower berth from Portland to Seattle.
Section 10 of the act of March 3, 1933 (47 Stat. 1516; Title 5, U. S. C., Sec. 73 (b), provides:
Whenever by or under authority of law actual expenses for travel may be allowed to officers or employees of the United States, such allowances, in the case of *94 travel ordered after the date of enactment of this Act, shall not exceed the lowest first-class rate by the transportation facility used in such travel.
Paragraph 13 of the Standardized Government Travel Regulations effective July 1, 1931, governing travel by civilian personnel, provides that the following accommodations will be allowed on trains and steamers: "
(a) One standard lower berth for each person and first-class stateroom accommodations on steamers when same is not included in cost of passage ticket. * * :!t
(c) A section, compartment, drawing room, or other superior railway or steamship accommodations will be allowed when the exigencies of travel require it. When not authorized in advance, a satisfactory explanation of the necessity for the use of such superior accommodations must accompany the expense account.
The plaintiff says that section 10 of the act of March 3, 1933, limiting actual expenses for travel to the “lowest first-class rate by the transportation facility used in such travel”, has no application to Pullman accommodations but has reference only to allowable expenses in respect to the railroad ticket proper, leaving to persons traveling on official business the right to determine for themselves the type of sleeping accommodations or daytime working facilities they reasonably require. Manifestly this contention is without merit. Proper sleeping accommodations are a necessary part of the transportation facilities of a railroad, and the actual traveling expenses contemplated and referred to in the act of March 3, 1933, include the cost of such accommodations as well as the cost of the railroad ticket itself.
The intent and purpose of section 10 of the act of March 3, 1933 (The Economy Act), was to effect economies in the traveling expenses of government officials. It was all inclusive in its terms and provided that “such allowances” in the case, of travel ordered after the effective date of the Act “shall not exceed the lowest first-class rate by the transportation facility used in such travel.” The undoubted purpose of the provision was to discontinue the practice of furnishing superior accommodations to government officials traveling on railroads and steamers, as theretofore authorized *95 in certain cases by paragraph 13 (c) of the Travel Regulations. This is the construction the General Accounting Office has consistently given to the section, and we think it correct. See Comp. Gen. 13, 10.
Notwithstanding the exigencies of the situation, as viewed by the plaintiff or his superiors in the National Recovery Administration, the maximum travel allowances in respect to pullman accommodations on his trip from Washington to Seattle was the lowest rate of one standard lower berth. The Comptroller General quite properly deducted $12.00 from his travel pay voucher, the excess cost of a pullman section compared with that of a through lower berth. The plaintiff is, therefore, not entitled to recover on this item of the claim.
2. In July 1934 the plaintiff, under a travel order issued by the National Recovery Administration, traveled on official business from Jackson, Mississippi, to Yazoo, Mississippi, and return; from Nashville, Tennessee, to Hohen-wald; to Columbia, Tennessee, and return; from Nashville, Tennessee, to Cookeville, Tennessee, thence to Asheville, North Carolina. This travel was performed in cars of personal friends, not related to the plaintiff, in the course of which, plaintiff stated in his travel pay voucher that he had expended sums in excess of $18.88 for oil, gas, and meals for the operators of the cars used. The plaintiff obtained no receipts for these expenditures, not knowing at the time that such receipts were required. It is stipulated that had this travel been performed by train the cost of such transportation would have been $18.88. It is further stipulated that the travel performed by the plaintiff in the manner stated enabled him to complete his work in two and one-half days’ less time than would have been required had he performed such travel by rail.
Paragraph 80 of the Travel Regulations provides:
Receipts, when practicable to obtain them, will be required for:
(e) Hire of special conveyance such as livery, boat, automobile (not taxicabs locally), aircraft, etc., where the amount involved is in excess of $1.
*96 The Comptroller General upon the audit of plaintiff’s verified travel voucher disallowed the items aggregating $18.88, on the grounds that no receipts were filed with the voucher, and that the evidence of the expenditures was too indefinite. We think the Comptroller General was justified in disallowing payment of these items. The provisions of the Travel Eegulations requiring receipts when practicable icr expenditures incurred in the use of special conveyances, and it was obviously practicable in this case, are reasonable and necessary to the orderly disbursement of funds appropriated to pay traveling expenses of government officials.
The failure of the plaintiff to obtain receipts for payment of the traveling expenses claimed would not preclude his right to recover in this action if the actual payment of such expenses was otherwise established by competent proof. The plaintiff, however, has not furnished such proof. The claim for these expenditures comes before the court exactly as it was presented to the General Accounting Office and is supported only by the statements made by plaintiff in the travel voucher. Plaintiff’s statements in the pay voucher that the train service to and from the points visited by him was inadequate, and that the method of travel used by him enabled him to complete his work in two and one-half days’ less time than would have been required if travel had been performed by rail, and that the cost of the transportation by rail would have been $18.88, are entirely immaterial and in no way establish, or even tend to establish, the amount actually and necessarily disbursed by him in connection with such travels. He is not entitled to recover on this item of the claim.
3. On January 2, 1935, the plaintiff was directed by his superior officers to proceed to San Francisco, California, on official business. The travel order directed plaintiff to proceed from Washington, D. C. to San Francisco or any side trips that might be necessary while on such assignment. The order then stated—
Upon the completion of your field assignment, the probable duration of which will be 3 months, you will ■return to your permanent station at Washington, D. C.
*97 and that—
While in travel status you will be allowed a per diem of $5.00 and incidental transportation expenses in accordance with the standardized Government Travel Regulations.
Under the directions and upon the authority of this travel order the plaintilf left Washington, D. C. on January 3, 1935, and traveled by rail to San Francisco, California, where he remained on official business in connection with the National Recovery Administration until March 1, 1935. Upon completion of his official duties at San Francisco he returned as directed in the travel order to Washington, D. C., and arrived there on March 7, 1935.
Subsequent to his return to Washington from San Francisco, plaintiff duly submitted his voucher for 59 days per diem covering the period of his absence from Washington, January 3, 1935 to March 7, 1935, amounting to $295.00, and $2.30 for incidental expenses. The Comptroller General disallowed the claim for per diem and incidental expenses holding that while the order of January 2, 1935 purported to constitute a temporary assignment, it was in effect a change of permanent station, and that the plaintiff was not entitled to the per diem claimed.
The sole issue as to this item of the claim is whether plaintiff’s assignment to San Francisco was temporary in character or was a change of permanent station.
At the time the plaintiff was sent to San Francisco other attorneys in the National Recovery Administration were sent to various posts throughout the country for the purpose of completing the staffs of designated Regional Offices. These assignments were intended to be temporary at the time they were ordered, it being the intention, however, of officials of the National Recovery Administration that the assignments would be made permanent should the attorneys display an aptitude for that particular work. On February '7, 1935, an office memorandum was prepared by the Assistant Counsel of the National Recovery Administration making definite assignment of some of these attorneys to be effective as .of February 4, 1935, and plain *98 tiff’s name appeared therein as assigned to a permanent station at San Francisco. This memorandum was not made public or communicated to any of the attorneys involved, including the plaintiff. Subsequently, on March 18, 1935, a general office memorandum was sent to all field personnel stating a change in policy was made in the matter of temporary assignments. The plaintiff on that date had completed his assignment in San Francisco and had returned to his permanent station in Washington.
The travel order of January 2, 1935, clearly shows that plaintiff’s assignment to San Francisco was a temporary one and did not constitute a change of permanent station. The assignment was designated “your field assignment, the probable duration of which will be three months.” The plaintiff was directed to “return to your permanent station in Washington” upon completion of the assignment. The parties have also stipulated that plaintiff accepted the assignment upon an express understanding with his superiors in the National Recovery Administration that the assignment was not intended to constitute a transfer of permanent station, and that he would be allowed the per diem of $5.00 during the period of his absence. The plaintiff was not notified of the office memorandum of February 7, 1935, and upon the completion of his work in San Francisco returned to Washington as directed in the travel order of January 2, 1935. If the office memorandum of February 7, 1935, effected a change in plaintiff’s permanent station from Washington to San Francisco as contended, that place has continued to be and is now his permanent station, as no subsequent order was ever made transferring him from that place. He has, however, since his return from San Francisco been permanently stationed in Washington. The situation would be entirely different if the plaintiff had remained indefinitely in San Francisco following the office memorandum of February 7, 1935, or had he subsequently been transferred from that office to Washington as his permanent station. Notwithstanding the bungling and slipshod manner in which this matter was handled in the National Recovery Administration, it is clear that the travel *99 order under which plaintiff proceeded to San Francisco did not constitute a change of permanent station from Washington to San Francisco, nor was such change effected by the office memorandum of February 7, 1935.
The plaintiff is entitled to recover on this item of the claim.
COUNTERCLAIM;
The defendant has interposed a counterclaim alleging that the plaintiff is indebted to the United States in the sum of $236.79. The counterclaim is predicated on the theory that the travel order of January 2, 1935, on which the plaintiff proceeded to San Francisco and return, was in effect a change of his permanent station and that since this order was not signed by the head of the department or administration as required by section 2 of the act of March 15, 1934 (48 Stat. 450), the traveling expenses incurred thereunder were without authority of law and should be refunded to the United States. The amount sought to be recovered on the counterclaim aggregates the traveling expenses of the plaintiff in making the trip from Washington to San Francisco and return, including incidentals, drayage, taxicab fares, etc., and per diem allowances from January 3, 1935, the date of plaintiff’s departure from Washington, to January 7,1935, the date of arrival in San Francisco.
The defendant concedes in the brief that if the travel order of January 2,1935 was for temporary travel the counterclaim can not be maintained. The court having held that the order in question was for temporary travel, and that it did not constitute a change of permanent station, the counterclaim must be dismissed.
Judgment is awarded the plaintiff on the third item of his claim in the sum of $297.30. It is so ordered.
Whalev, Judge; Littleton, Judge; Gkeen, Judge; and Booth, Chief Justice, concur.